UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Beverly G.,** | Civ. No. 21-03001 (KM) |
| Plaintiff, | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

    Beverly G. brings this action to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Title II Disability Insurance Benefits ("DIB") on remand from this court. Upon reviewing and weighing certain evidence, the Administrative Law Judge ("ALJ") concluded that Beverly G. was not disabled from August 28, 2014 through January 17, 2018, but was disabled beginning on January 18, 2018. Beverly G. claims that the adverse portion of the ALJ's decision, *i.e.,* the finding that she was not disabled from August 28, 2014, through January 17, 2018, is not supported by substantial evidence.

    I find that the ALJ's determination that Beverly G. was capable of performing her past relevant work until January 18, 2018 was supported by substantial evidence. The Commissioner's decision is therefore **AFFIRMED**.

1

I.   **BACKGROUND**[1]

Beverly G. first applied for DIB pursuant to Sections 216(i) and 223(d) of the Social Security Act ("SSA") on October 17, 2014, alleging disability as of August 28, 2014. (AR 12.) Beverly G.'s application was denied initially and on Reconsideration. (AR 62–72.) Beverly G. requested a hearing before an ALJ to review her application de novo. (AR 73–106.) A hearing was held on February 15, 2017, before ALJ Richard West, who issued a decision on March 20, 2017. ALJ West denied disability at step four of the sequential evaluation, on the grounds that Beverly G. could perform her past relevant work as a nursery school attendant at a day care center at the Merck company. (AR 18.)

Beverly G. requested Appeals Council Review of ALJ West's decision, but her request was denied on May 17, 2018. This denial rendered ALJ West's decision the final decision of the Commissioner. (AR 1–8.) Beverly G. then appealed that decision to this court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Judge Claire C. Cecchi handled Beverly G.'s initial appeal under case number 18-cv-11825. On January 6, 2020, Judge Cecchi found that the ALJ's decision was not supported by substantial evidence because the ALJ did not discuss the fact that Beverly G. had been diagnosed with radiculopathy. (AR 361.) Judge Cecchi therefore remanded the case to the ALJ for further analysis regarding the implications of the radiculopathy diagnosis. (AR 362.)

On remand, a second hearing took place before ALJ West on October 21, 2020. (AR 270–94.) Judge West issued his second opinion on November 7, 2020. (AR 261.) In that opinion, Judge West determined that the sudden return of shoulder pain beginning on January 18, 2018 rendered Beverly G. unable to

---

[1]   Certain citations to the record are abbreviated as follows:

DE = docket entry in this case
AR = Administrative Record (DE 6)
Pl. Br. = Plaintiff's brief in support of remand (DE 13)

2

perform jobs that exist in significant numbers in the national economy and thus rendered her disabled from that date. (AR 260.) However, ALJ West reaffirmed his previous decision to the extent of holding that, between August 28, 2014 and January 18, 2018, Beverly G. was able to perform her past relevant work as a nursery school attendant (Dictionary of Occupational Titles ("DOT") 359.677-018) and therefore was not disabled during that period. (AR 259.) Beverly G. again appealed to this court, arguing that the determination that she was not disabled in that 2014–2018 period was not supported by substantial evidence. As no party disputes the finding that she was disabled thereafter, I focus exclusively on that period, August 28, 2014 to January 18, 2018.

## II. DISCUSSION

### A. Five-Step Process and this Court's Standard of Review

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423. To qualify, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(c), 1382(a).

Under the authority of the SSA, the Social Security Administration (the "Administration") has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 CFR §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process, which is prescribed by regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c),

416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the severe impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive disability benefits (and the analysis ends); if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**RFC and Step 4:** Determine the claimants "residual functional capacity," (the "RFC") meaning "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). *Caraballo v. Comm'r of Soc. Sec.*, 2015 WL 457301, at *1 (D.N.J. Feb. 3, 2015). Decide whether, based on her RFC, the claimant can return to her prior occupation. 20 C.F.R. § 1520(a) (4)(iv); *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the Administration to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

For the purpose of this appeal, the Court conducts a plenary review of the legal issues. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the ALJ are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to

support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny,* 745 F.2d at 221–222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart,* 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Decision

ALJ West undertook the five-step inquiry. His conclusions are summarized as follows:

### Step 1

The ALJ found that Beverly G. had not engaged in substantial gainful activity from the alleged onset date of August 28, 2014, through the date of her hearing. (AR 255.)

### Step 2

5

The ALJ found that Beverly G. had the following severe impairments between August 28, 2014 and January 18, 2018: degenerative disc disease and radiculopathy. (AR 255.)

### Step 3

With respect to her severe impairments, Beverly G. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (AR 255). ALJ West paid particular attention to medical listings 1.02 (major dysfunction of a joint) and 1.04 (Disorders of the spine).

First, ALJ West declined to find that Beverly G.'s impairments met the criteria for medical listing 1.02 (major dysfunction of a joint) because "the record does not document gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." (AR 255.)

Second, ALJ West declined to find that Beverly G. met the requirements of listing 1.04 (disorders of the spine) because "the record does not document nerve root compression characterized by neuro-anatomic distribution of pain, spinal arachnoiditis, nor lumbar spinal stenosis resulting in pseudoclaudication." (AR 255.)

### RFC and Step 4 – Ability to Perform Past Work

Next, ALJ West defined Beverly G.'s RFC, finding that before January 18, 2018, Beverly G. had the ability to perform "the full range of light work as defined in 20 CFR 404.1567 and 416.967." (AR 256.)

ALJ West began his RFC analysis by explaining that he followed a two-step process in which he first determined whether Beverly G. had an underlying medically determinable physical or mental impairment "that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce [Beverly G.'s] pain or other symptoms." (AR 256.) He then explained that in the second step, he "must

evaluate the intensity, persistence, and limiting effects of [Beverly G.'s] symptoms to determine the extent to which they limit [her] work-related activities." (AR 256.) To do this, he is required to look to objective medical evidence, or to the entire case record where objective medical evidence does not substantiate Beverly G.'s statements about "the intensity, persistence, and limiting effects claimant's symptoms." (AR 256.)

ALJ West concluded that "the claimant's medically determinable impairments reasonably could be expected to cause symptoms and limitations. However, to the extent that the claimant alleges that the intensity, persistence, and limiting effects of her conditions result in disability prior to the established onset date, this is not consistent with the evidence in the record." (AR 257.)

ALJ West reviewed the findings of several doctors as well as the DDS consultants. Robert Rosania, DC, found that she had neck and back pain and stiffness, but Rosania recommended only conservative physical therapy. (AR 257.) Similarly, Dr. Abhishek Shrivestava took three views of her spine, which revealed vertebral bodies of a normal height as well as moderate to advanced disc space narrowing from the C3-4 to C7 vertebrae. (AR 257.) In addition, upon an examination in October 2018, Dr. Vekhins reported that "claimant walked without an assistive device. She walked on toes and heels, she could squat. Examination of the cervical spine showed no vertebral tenderness, no abnormal tilt, range was full, Spurling maneuver was negative. Examination of the lumbar spine showed no vertebral tenderness, no spasm, she flexed to 80 degrees." (AR 258.) In addition, ALJ West concluded that the shoulder injury which led to his assessment that Beverly G. was disabled after January 18, 2018 had occurred earlier but resolved itself in 2016, before flaring up again in 2018. (AR 257.)

Finally, the DDS consultants concluded that "claimant can occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday." They also found that claimant has "postural and manipulative limitations." (AR 258.)

Based on these findings, ALJ West found that Beverly G. could perform the full range of light work in the relevant period, and thus could have perform her past relevant work as a Nursery School Attendant. (AR 256.) He therefore found that she was not disabled in the relevant period, and his inquiry ceased at step 4.

### C. Beverly G.'s Challenge

Beverly G. challenges the Commissioner's decision on two grounds. First, she argues that because Beverly G. testified that she had to lift more than 30 pounds occasionally in her previous work, the ALJ's decision to determine that her previous work was performed at a light exertion level was reversible error. (Pl. Br. at 9–18.) Second, she argues that the RFC was not supported by substantial evidence because on remand, the ALJ reached the same RFC as before, even after newly including radiculopathy as a severe impairment. (*Id.* at 18–30.) Neither of these arguments succeed, and the Commissioner's decision will therefore be affirmed.

#### 1. Analysis

Beverly G.'s two arguments have some merit, but are unavailing for several reasons.

First, although Beverly G. now claims that vocational expert testimony was necessary, at the hearing her counsel agreed that the ALJ could classify her work without such testimony. (AR 281; Pl. Br. at 15.) In addition, there is no general requirement of VE testimony step 4. *Sanz v. Astrue*, No. 11-CV-5592 DMC, 2013 WL 164945, at *8 (D.N.J. Jan. 11, 2013).

Second, Beverly G. argues that her previous job should have been classified differently based on the Dictionary of Occupational Titles, either as a "Child Monitor" (DOT 301.677-010) or as a "Attendant, Children's Institution" (DOT 359-677-010). (AR 278; Pl. Br. at 16.) Both of these jobs have an exertion rating of medium, in contrast to "Nursery School Attendant," which is rated as requiring light exertion. Thus, if the ALJ had determined that Beverly G.'s previous job as a childcare worker for children of the employees of Merck was

8

more akin to a child monitor or attendant of children's institution, her RFC would have ruled out her returning to such work. Consequently Beverly G. argues that the ALJ's determination that her position should be classified as Nursery School Attendant was not supported by substantial evidence.

It appears, however, that Nursery School Attendant, as described in the DOT, is the best fit for Beverly G's prior position, and therefore the ALJ's decision was supported by substantial evidence. Beverly G. took care of the children of Merck employees at the Merck facility during the day, while their parents were at work. (AR 259.) She did not live with the children or work in a private home. The DOT's alternative title for Nursery School Attendant is "child-day-care center worker," which it describes as follows:

> Organizes and leads activities of prekindergarten children in nursery schools or in playrooms operated for patrons of theaters, department stores, hotels, and similar organizations: Helps children remove outer garments. Organizes and participates in games, reads to children, and teaches them simple painting, drawing, handwork, songs, and similar activities. Directs children in eating, resting, and toileting. Helps children develop habits of caring for own clothing and picking up and putting away toys and books. Maintains discipline. May serve meals and refreshments to children and regulate rest periods. May assist in preparing food and cleaning quarters.

(DOT 359.677-018.) Although this definition is somewhat dated—*e.g.,* most department stores no longer provide childcare—it clearly contemplates someone taking care of children for finite periods of time while their parents are otherwise engaged, as Beverly G. did.

The definitions for the other positions, in contrast, contain elements which are quite different from Beverly G.'s prior occupation. Child Monitor,[2] for

---

[2]   The full description of Child Monitor is:

> Performs any combination of following duties to attend children in private home: Observes and monitors play activities or amuses children by reading to or playing games with them. Prepares and serves meals or formulas. Sterilizes bottles and other equipment used for feeding infants. Dresses or assists children to dress and bathe. Accompanies children on walks or other outings. Washes and irons clothing. Keeps children's quarters clean and tidy. Cleans other parts of home. May be designated

example, is explicitly designated as a "domestic service" occupation and refers primarily to a type of live-in nanny or babysitter within a private home. (DOT 301.677-010.) Beverly G.'s previous employment was clearly not in domestic service, so Child Monitor is not an appropriate fit for her previous work.

The DOT description for Attendant, Children's Institution[3] is also quite different from Beverly G.'s previous occupation. An alternative title for this occupation is "house parent," and the description clearly contemplates an employee who works in some type of institution where children live, such as a group home for children in the foster system, rather than a day-care setting where children go home with their parents at the end of the day. The description specifically includes waking the children up each morning, a duty that was not part of Beverly G.'s previous employment. Thus, Attendant, Children's Institution is not an appropriate fit for Beverly G.'s previous work.

It thus appears that Nursery School Attendant is the closest analogue to Beverly G.'s previous employment. The DOT considers the position to have a light exertion level,[4] and thus because ALJ West assessed that Beverly G. has

---

> Nurse, Infants' (domestic ser.) when in charge of infants. May be designated Baby Sitter (domestic ser.) when employed on daily or hourly basis.

(DOT 301.677-010.)

[3]   The full description for Attendant, Children's Institution is:

> Cares for group of children housed in city, county, private, or other similar institution, under supervision of superintendent of home: Awakens children each morning and ensures children are dressed, fed, and ready for school or other activity. Gives instructions to children regarding desirable health and personal habits. Plans and leads recreational activities and participates or instructs children in games. Disciplines children and recommends or initiates other measures to control behavior. May make minor repairs to clothing. May supervise housekeeping activities of other workers in assigned section of institution. May counsel or provide similar diagnostic or therapeutic services to mentally disturbed, delinquent, or handicapped children. May escort child to designated activities. May perform housekeeping duties in children's living area.

(DOT 359.677-010.)

[4]   It is perhaps dubious that a Nursery School Attendant never needs to lift more than twenty pounds. Many, if not a majority, of children in daycare weigh more than twenty pounds and need to be picked up at least occasionally. It is well-established, however, that ALJs are entitled to take the categories and descriptions of the DOT into account and the Third Circuit has repeatedly accepted the conclusion that daycare work is a light exertion level occupation.

10

the RFC to perform the full range of light work, she is capable of returning to her previous occupation.

Third, Beverly G. argues that even if the DOT classifies Nursery School Attendant as light exertion level work, her prior occupation, as she testified at her hearing, involved more intensive work, including occasionally lifting children who weighed significantly more than 20 pounds. (Pl. Br. at 14.) Generally, the "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62. As described by Beverly G., therefore, her previous work was performed at a medium exertion level. It is not necessary, however, that Beverly G. return to the *actual position* she previously held. Rather, SSR 82-61 states that at step 4, the ALJ must determine if the claimant is able to perform "the particular functional demands and job duties peculiar to an individual job as he or she actually performed it," *or* if she is able to perform "the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." (SSR 82-61.) Here, although Beverly G. is no longer able to perform her prior occupation as she testifies that she actually performed it, the ALJ determined that she is able to meet the functional demands of Nursery School Attendant positions as they are generally performed in the national economy, *i.e.,* at the light exertional level defined by the DOT. *See Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 160 (3d Cir. 2009).

Fourth, Beverly G. argues that the RFC was not supported by substantial evidence. She argues that this was so for two reasons: (a) Although the ALJ included radiculopathy as a severe impairment, it made no difference in the limitations assessed as part of Beverly G.'s RFC (Pl. Br. at 16–17.); (b) The ALJ should have taken Beverly G.'s shoulder injury, which rendered her disabled as

---

*Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 766 (3d Cir. 2009); *Perez v. Comm'r of Soc. Sec.*, 96 F. App'x 805, 807 (3d Cir. 2004). I therefore find that I am bound by precedent to accept the classification of Nursery School Attendant as a light exertion level occupation.

11

of January 18, 2018, into account for the preceding period, and should have found that it also rendered her disabled before January 2018. Beverly G. cites no medical evidence that contradicts the ALJ's findings with regard to the RFC. Nor does she argue that it is impossible for someone diagnosed with radiculopathy to perform light work. Rather, her argument posits that if Judge Cecchi remanded the case with the requirement that the ALJ take Beverly G.'s radiculopathy into account in his analysis, the ALJ was required to reach a different RFC. That is not the case. The ALJ must look at the record as a whole and assess the functional capacity of the claimant regardless of her specific diagnoses. I find that ALJ West did so and thus that the RFC was supported by substantial evidence.

Finally, with regard to Beverly G.'s shoulder pain, she argues essentially that because the shoulder impingement was diagnosed years before, it is not possible that it only became significant enough to render her disabled on January 18, 2018. (Pl. Br. at 28.) Although it is true that her shoulder impingement had been diagnosed well before 2018, the medical evidence clearly states that the pain "started suddenly" again on January 18, 2018, after having previously improved. (AR 648.) Beverly G. points to no evidence that her shoulder pain was at the same level in the years prior to January 18, 2018 as it was thereafter. Therefore, the ALJ's decision that her shoulder pain rendered Beverly G. disabled as of January 18, 2018, but not before, is supported by substantial evidence and the decision as a whole must be affirmed.

### III. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. An appropriate order accompanies this Opinion.

Dated: April 21, 2022

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**